1

2

3

4

5

6

7

8                                   UNITED STATES DISTRICT COURT

9                                  EASTERN DISTRICT OF CALIFORNIA

10

11    JENEANE SHELLABARGER, et al.,              No.  2:13-cv-00188-TLN-CMK

12                   Plaintiffs,

13         v.                                    **FINAL PRETRIAL ORDER**

14    KEVIN HALE, et al.,                        TRIAL DATE:  November 13, 2017
                                                 TIME: 9:00  a.m.
15                   Defendants.

16

17          This Court held a Final Pretrial Conference on September 7, 2017.  Plaintiffs Jeneane

18    Shellabarger and Kenneth Potter ("Plaintiff") were represented by Corey Page.  Defendants City

19    of Red Bluff, Kevin Hale, and Ray Martinez ("Defendants") were represented by Amie

20    McTavish.  After the hearing, the Court makes the following findings and orders:

21    **I.      JURISDICTION / VENUE**

22          Each of Plaintiffs' causes of action are brought pursuant to 42 U.S.C. § 1983 and allege

23    violations of their Fourth Amendment rights.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

24          Venue is proper in this District pursuant to 28 U.S.C. § 1391.

25    **II.     SETTLEMENT CONFERENCE**

26          At this time settlement conference is not requested.

27    **III.    JURY TRIAL**

28          The parties have agreed to a bench trial.

                                                   1

## IV.    UNDISPUTED FACTS

IV.    **UNDISPUTED FACTS**

The parties have presented two separate "positions" as to the undisputed facts.  At the hearing, the parties indicated this is largely a reflection of a difference of opinion on the issues presented in the case rather than a factual disagreement.

In Defendants' view, the following are the pertinent, undisputed facts:

a.    Plaintiffs were residing at 21179 Luther Road, Red Bluff, CA on March 24, 2011.

b.    On March 23, 2011, Judge Skillman of the Tehama County Superior Court issued a search warrant authorizing the search of Plaintiffs' residence at 21179 Luther Road, Red Bluff, CA along with other buildings located at that address.

c.    Defendant Hale attended a portion of the briefings.

d.    During all relevant times, Defendant Hale was employed as a peace officer by the City of Red Bluff.

e.    On March 24, 2011, law enforcement officers, including former Defendant Darrin Dicharry and Defendants Hale and Martinez, arrived at 21179 Luther Road, Red Bluff, CA to execute the search warrant.

f.    Defendant Hale was assigned to the backyard area of the residence to detonate a "flash bang" grenade.  When Defendant Hale arrived at the residence, he proceeded to the backyard area where he detonated the flash bang.

g.    Since Defendant Hale was assigned to detonate the flash bang in the backyard, he was not part of the entry team.  No officer or other employee of the City of Red Bluff was part of the entry team.

h.    Officers seized items found during the execution of the search warrant on March 24, 2011, at Plaintiffs' residence including what appeared to be drug residue and drug paraphernalia.  Defendant Hale seized a chainsaw, a paintball gun, and a bicycle from Plaintiffs' residence.

In Plaintiffs' view, the following are the pertinent, undisputed facts:

a.    Prior to March 24, 2011, Potter was never convicted of a felony, a weapons-related offense, a drug-related offense, or a violent offense.

b.    Prior to March 24, 2011, Potter had never been arrested or charged for a weapons-

2

related offense or a drug-related offense. Potter's only criminal conviction was a misdemeanor traffic offense and a petty theft.

      c.      Potter never owned a gun or engaged in the sport of hunting.

      d.      Approximately one week prior to March 24, 2011, Defendant Martinez, agent of the Tehama Interagency Drug Enforcement ("TIDE") task force was assigned team leader for the warrant on Plaintiffs' residence.

      e.      Defendant Martinez's duty was to establish a plan for safely executing the search warrant on Plaintiffs' residence.

      f.      The warrant authorized the seizure of: methamphetamine, narcotic paraphernalia, including property "commonly associated with the sales, storage, and use of methamphetamine;" "property tending to establish and document sales of methamphetamine," "personal property tending to establish the existence of a conspiracy to sell methamphetamine," and "property tending to establish the identity of person in control of the premises."

      g.      The warrant never sought information for stolen property. The warrant was a "knock and announce" warrant. Suspected stolen property was not allowed to be seized pursuant to the search warrant.

      h.      Prior to March 24, 2011, Defendant Martinez performed surveillance on the residence multiple times and background research including reviewing a copy of a police file on Potter.

      i.      The entire basis for believing that Potter had methamphetamines at the residence was the testimony of a convicted felon — a user and dealer of methamphetamine, who was getting consideration with regard to pending criminal charges for giving police "tips."

      j.      Former Defendant Darrin Dicharry ("Dicharry") was notified about the potential warrant a few days before executing it. Dicharry was assigned the knock and announce duty.

      k.      At approximately 8:00 a.m. on March 24, 2011, nine officers including members of TIDE and the Glenn Interagency Narcotics Task Force ("GLINTF"), as well as officers from other law enforcement agencies in Tehama County, attended a briefing conducted by Defendant Martinez in preparation for the execution of the search warrant for Potter and 21179 Luther Road, Red Bluff, CA. Defendant Hale was at this meeting.

l. At the conclusion of the overall briefing, individuals, including Defendant Hale, officer of the Red Bluff Police Department, broke up into other separate teams at various locations within the TIDE office to review the tactical briefing.

m. At the tactical briefing, Defendant Martinez told officers, including Hale, that the search at Plaintiffs' residence was a search for methamphetamine. Defendant Martinez was concerned about executing the warrant because the residence had a long drive way, security gate, and potential presence of children. Defendant Martinez and officers, including Hale, discussed dogs at the residence and the entry team's plan for executing the warrant and managing Plaintiffs' dog. The tactical briefing took less than 15 minutes.

n. Contrary to the plan that was actually executed, Defendant Martinez suggested to Officer Clay, his supervisor, a different method of executing the warrant. Defendant Martinez thought a safer plan would be to use subterfuge and calling the residence to have Plaintiff Potter leave the residence. Defendant Martinez stated that he did not feel comfortable executing the search warrant as planned, and there were a lot of red flags at that residence that Defendant Martinez was uncomfortable with. Defendant Martinez's alternate ideas were declined and he was told to execute the search warrant. If it was his choice, Defendant Martinez would have executed the search warrant a different way.

o. Besides Defendant Martinez, at least two other officers in the team executing the search warrant on Plaintiffs' residence felt uncomfortable with the tactical plan based on the facts of Plaintiffs' residence, the dogs and the occupants, and had concerns and issues and wanted to execute the search warrant differently.

p. Prior to arriving at Plaintiffs' residence, Defendants Martinez and Hale, Dicharry, and other officers discussed what all members of the team would be doing at Plaintiffs' residence. It was decided that Hale would detonate the flash-bang when notified by the entry team in order to assist the entry team.

q. Defendant Martinez was aware of the presence of two dogs on Plaintiffs' property.

r. Notwithstanding the allegations regarding the day of the incident, Plaintiff Potter's dogs never attacked any person or any dog, and nobody ever complained to Plaintiff Potter's family or the City of Red Bluff about Plaintiff Potter's dogs.

4

s.       Defendant Martinez had a conversation with either one or two people about the less than lethal options that they had on their person and the less than lethal option Defendant Martinez had on his person.  Defendant Martinez also stated that he was number two in the stack and would use the less than lethal option if appropriate.  Defendant Martinez does not recall if there was more than one conversation.  Defendant Hale does not recall any discussion about taking measures to protect the dogs.

t.       At the TIDE office, the officers discussed whether anyone wanted to hold a fire extinguisher to use against the dog; it was agreed upon by all members of the entry team to not bring a fire extinguisher to the residence.

u.       At approximately 9:00 a.m. on March 24, 2011, Defendant Officers arrived at Plaintiffs' residence.  Six officers were assigned by Defendant Martinez to the entry team with Dicharry first to enter, Defendant Martinez second, and other officers behind them.

v.       Defendant Martinez or Clay assigned Defendant Hale to be a perimeter person and deploy a flash bang device in the back yard.  A flash bang is a diversionary device, intended to alert someone that something is happening outside and divert them in a different direction.

w.       Once a flash bang device is detonated, it is not very hard for a person to figure out that the police are coming.

x.       After the residence was secured, Defendant Martinez or Clay assigned Defendant Hale to look for any potential stolen property that was in and around the residence.  There was no instruction what kind of property to look for that was stolen or how to ascertain whether property was stolen or not.

y.       The detonation of the flash bang device caused excitement of the two dogs within Plaintiffs' residence, as observed through the glass windows at the front door.

z.       A person was seen moving within the residence, causing Defendant Martinez and others to yell, "Compromised!"

aa.      Former Defendant Dicharry "checked the front door of the residence and discovered it was unlocked."

bb.      According to Defendant Martinez who was standing directly behind Dicharry, Dicharry announced, "Sheriff's office, search warrant" and simultaneously opened the unlocked

5

front door to Plaintiffs' residence. Defendant Martinez did not see Dicharry knock on Plaintiffs' door.

cc.     All of the police reports list the fact that Dicharry opened the door before listing the fact that there was a "knock and announce."

dd.     Police reports are written in chronological order.

ee.     When Dicharry opened the door, Dicharry shot one round from his M4 rifle into Plaintiffs' dog Krizzy's head, killing Krizzy.

ff.     Based on his knowledge of the plan for managing the dog at Plaintiffs' residence, the Captain of the Police Department for the City of Red Bluff believes the plan was satisfactory and it met the City of Red Bluff standards for managing animals at residences while executing search warrants.

gg.     The City of Red Bluff does not have any written training materials concerning the management and control of animals at a residence when the police are planning to enter that residence.

hh.     The City of Red Bluff does not have any knowledge of any government bulletins on how to handle animals with a fire extinguisher.

ii.     Officers seized items found during the execution of the search warrant at Plaintiffs' residence including what appeared to be drug residue and drug paraphernalia. Plaintiff Potter was arrested for possession of a controlled substance and possession of an ingestion device.

jj.     Other than a statement from Officer Clay to be on the lookout for stolen property, Defendant Hale had no reason to believe Plaintiff Potter had stolen property. After walking through the entire house, Hale did not see anything that looked like stolen property.

kk.     When Defendant Hale entered the detached garage, he saw a paintball gun and a chainsaw. Defendant Hale recalled a previous report where there were some stolen items that matched similar items. Defendant Hale did not recall the type of paintball gun or type of chainsaw that were reported stolen. Additionally, Defendant Hale saw a bicycle. Defendant Hale decided to ask Plaintiff Potter about these items and contacted him inside his residence.

ll.     Defendant Hale asked Plaintiff Potter about several items that he found inside Plaintiff Potter's garage. Plaintiff Potter indicated that most of the items were his, but some of

the items belonged to other people.

mm.     Defendant Hale escorted Plaintiff Potter to his garage and showed him several items.  With regard to certain items, Plaintiff Potter said a friend brought those items to his residence, but Plaintiff Potter refused to provide Defendant Hale with the name of his friend. Defendant Hale informed Plaintiff Potter that he would be taking three items for safekeeping until he could determine if the items were stolen or not.

nn.     Defendant Hale was aware that there had been a theft of paintball supplies several months earlier, but the exact description of the paintball supplies was not available to him at the time.

oo.     Defendant Hale stated based on his training that while at a house during the service of a search warrant if he saw anything in plain view that was potentially stolen property or evidence of a crime, he could seize those items.

pp.     Defendant Hale believed there was probable cause to believe the items were stolen even though the items themselves were not illegal and were not registered as being stolen because of Plaintiff Potter's comments, his criminal history and thefts of similar items around the same time of paintball guns and a chainsaw being stolen from a vehicle.

qq.     Unable to positively identify these items as stolen property, Defendant Hale took the items for safekeeping to try to determine if they were stolen property.  Defendant Hale completed a property receipt, logging the items for safekeeping.

rr.     The property receipt was given to a patrol officer to take to Plaintiff Potter.

ss.     Plaintiffs asked for the return of their paintball gun, bike, and chainsaw and were told that they would get these items when the case was resolved.

tt.     On April 28, 2011, Defendant Hale was unable to find any proof or evidence that the property seized was stolen and closed out the case.  Plaintiffs were not charged with any crime regarding the paintball gun, bicycle, or chainsaw.

uu.     On October 25, 2011, the items in this case were removed from evidence and placed in a location for auction due to the property being unclaimed and the owner being unknown.

vv.     On or about December 7, 2011, Plaintiff Potter contacted the City of Red Bluff

7

Police Department Property Officer to schedule an appointment to have all 3 Items listed on the evidence/property processing form released.  An appointment was scheduled for January 19, 2012 at 10:00 a.m.

ww.    On or about December 8, 2011, Plaintiff Potter received a phone call from the Red Bluff Police Department advising that the property had been disposed of according to procedure.

xx.    In 2011 and 2012, the records staff that worked the front window for the City of Red Bluff Police Department would automatically assign an appointment date somewhere between 7 and 14 days from the day that the person came to the front counter to inquire about their property.  The policy has since changed several times.

yy.    According to the City of Red Bluff property release authorization forms, someone had a conversation with Plaintiff Potter a couple days prior to December 29, 2011, and set an appointment date for January 19, 2012.  After the appointment was set for the property release pickup appointment, Heidi Thomas called and told Plaintiff Potter that the property was no longer available.

zz.    Because Defendant Hale's report was written in a manner that listed ownership of the property as disputed, there was nothing that Plaintiff Potter could have said to empower Clint Weston, Community Service Officer for the Red Bluff Police Department, to release the property to him.  Officer Weston states that items are only released to somebody who shows satisfactory proof of ownership even if that person was the one who had custody of the items when the police originally took it.

aaa.    The City of Red Bluff's practice is not to release items without proof of ownership.  Satisfactory proof of ownership is when there is no dispute and the person comes in with the property receipt documents.  An original sales receipt proving the ownership may be sufficient.  In cases involving other types of proof, such would be passed onto the investigating officer or the police administration.

bbb.    In January 2012, Officer Weston was not aware of any City of Red Bluff Police Department policy that instructed officers on when they are supposed to fill out case disposition forms.  There was no customary practice with regard to printing out these forms in relation to the date the property was disposed of.

ccc.     Officer Weston did not attempt to locate the owner of the property.  He does not recall whether contacts were made by any officer to try to establish who might own the property.

ddd.     Officer Weston acts as a liaison between propertyroom.com and the police department.  He contacted propertyroom.com about the paintball gun and the Redline bicycle because the items had been in storage beyond the period of time that he was required to store them.  Officer Weston has no recollection when he passed custody of the paintball gun and the Redline bicycle to propertyroom.com.

eee.     On October 26, 2011, propertyroom.com picked up items from the Red Bluff Police Department.

fff.     On November 23, 2011, the Redline bicycle was shipped to a buyer.

ggg.     On December 21, 2011, according to the City of Red Bluff case disposition form, a firearm was destroyed.

hhh.     On January 24, 2012, propertyroom.com picked up items from the Red Bluff Police Department.

iii.     Prior to contacting propertyroom.com, Officer Weston did not contact or try to contact Plaintiff Potter.  The first time Weston contacted Plaintiff Potter about his items was when Plaintiff Potter submitted a request for the property to be returned.  At this time, propertyroom.com had already picked up the Redline bicycle and paintball gun.

jjj.     On February 1, 2012, Weston had a conversation with Plaintiff Potter that the property he was requesting was no longer available.  A previous attempt to contact Plaintiff Potter was made on January 31, 2012.

kkk.     Less than a week after the phone conversation, Officer Weston discovered one of the items had been retained for departmental use and been sent out to one of the investigators working with another agency for service of search warrants.  Officer Weston did not contact Plaintiff Potter to notify him that the chain saw still existed nor was Officer Weston aware that anyone else contacted Plaintiff Potter.

lll.     On February 9, 2012, Paul Nanfino, Chief of Police of the City of Red Bluff, wrote to Plaintiff Potter that if he was able to provide proof of ownership regarding the above the bicycle, paintball gun and chainsaw that he would look further into the matter.  At that time the

9

1    case was marked closed and the items were disposed of.

2        mmm. City of Red Bluff does not think that Defendant Hale's conduct in seizing the

3    property for "safekeeping" was wrong.  Nor does the City of Red Bluff believe it is necessary to

4    have any retraining of Defendant Hale on how to categorize seized items as "evidence" versus

5    "safekeeping."

6        nnn.    The City of Redbluff and the police captain believe that Defendant Hale had

7    probable cause to seize the paintball gun, bike, and chainsaw.

8        ooo.    On March 1, 2012, Officer Weston reviewed the property records in this case and

9    located some clerical errors.  A supplemental report was created.  The paintball gun which was

     reportedly destroyed was actually sent to Property Bureau for auction.

10

11       ppp.    Another supplemental report was generated and indicated that a Poulan chainsaw

     was sent to the property bureau for auction when the chainsaw was actually held for departmental

12
     use and a note was made in the comment section in the file indicating such.  Weston was advised
13
     that a possible claim had been made regarding this property.  Weston collected the chainsaw and
14
     placed it back into evidence until the potential claim was complete.

15       qqq.    Defendant Hale is now a sergeant with the City of Red Bluff, and he believes his

16   seizures were in accordance with the City of Red Bluff policies, and if he would encounter the

17   same situation, he would seize the property again.

18   **V.    DISPUTED FACTUAL ISSUES**

19       Again, the parties have presented two separate "positions" as to the disputed facts.

20       In Defendants' view, the following are the pertinent, disputed facts: [1]

21       a.    The parties dispute whether Defendant City of Red Bluff has an unconstitutional

22   policy of requiring individuals to prove ownership of seized property prior to the City releasing

23   said property.

24       b.    The parties dispute whether Plaintiffs have standing to bring a claim for injunctive

25   relief as pled in their first amended complaint.

26   _____

     [1]    These are taken from the parties Joint Final Pretrial Conference Statement.  (ECF No. 87 at 12.)  Some of
     the identified "factual disputes" seem legal and the precise nature of them has not been made clear.  Additionally,
27   Defendants limited their list of disputed facts to Plaintiffs' second cause of action.  As the Court observed at the final
     pre-trial conference, Defendant City of Red Bluff has filed no dispositive motions in this case and the deadline to do
28   so has passed.

c. The parties dispute whether Plaintiffs' request for declaratory relief in their first amended complaint is proper.

d. The parties dispute whether Plaintiffs have a property interest in the chainsaw, paintball gun, and bicycle seized from their residence on March 24, 2011.

In Plaintiffs' view, there is a single disputed factual issue relating their claims:

a. The parties dispute whether Defendants knocked and announced prior to entering Plaintiffs' residence.

## VI. DISPUTED EVIDENTIARY ISSUES

a. Defendants indicate that they intend to file a motion pursuant to Fed. R. Civ. P. 50. Additionally, Defendants anticipate filing motions in limine seeking the exclusion of the following:

1. Evidence pertaining to any settlement negotiations between counsel for the parties, including correspondence, emails, and or any verbal statements made for purposes of settlement negotiations.

2. Statements made by counsel offered as evidence to prove a fact in contention.

3. Any evidence of the killing of Plaintiffs' dog during the execution of the search warrant.

4. Evidence or argument pertaining to the amount of Defendants' attorneys' fees and costs incurred in defending this action.

5. Evidence or argument regarding the disposition of the property seized.

6. Evidence regarding a search warrant execution at Plaintiffs' residence after the incident at issue in their first amended complaint.

7. Plaintiff's Supplemental Expert, Roger Clark, from testifying due to Plaintiffs' failure to comply with Fed. R. Civ. P. 26.

8. Any evidence that they did not identify or disclose in their disclosures under Fed. R. Civ. P. 26.

b. Plaintiffs anticipate filing motions in limine seeking the exclusion of the following:

1. Evidence, questions, or argument pertaining to either Plaintiff's alleged

11

criminal history.

2. Evidence, questions, or argument pertaining to any alleged unlawful conduct by either Plaintiff after March 24, 2011.

3. Evidence, questions, or argument pertaining to any alleged property or contraband that either Plaintiff may have possessed but was never discovered by police on or before March 24, 2011.

4. Evidence, questions, or argument pertaining to any tattoos that either Plaintiff received after March 24, 2011.

5. Evidence, questions, or argument pertaining to any lawsuits, filings, or claims of either Plaintiff against any Defendant concerning Defendants', or their Counsels', billing records.

6. Evidence, questions, or argument pertaining to certain photos of Plaintiffs' residence and either Plaintiff.

7. Evidence, questions, or argument pertaining to the conduct, progress, and/or outcome of any criminal charges brought against Plaintiff Potter after March 24, 2011.

8. References to witnesses as experts, unless previously designated by the Court as expert.

9. Evidence, questions, or argument pertaining to certain opinions and beliefs of Defendants' designated expert witnesses.

10. Evidence of mug shot(s) of either Plaintiff.

11. Evidence that contradicts Defendants' sworn deposition testimony.

12. Evidence, questions, or argument pertaining to illicit drug use by either Plaintiff.

13. Evidence, questions, or argument pertaining to Plaintiff Potter's education or employment history.

14. Evidence, questions, or argument pertaining to the good faith or good intentions of Defendants.

15. Evidence, questions, or argument that someone other than the Defendants were

12

responsible because Defendants were following orders.

16. Evidence, questions, or arguments pertaining to Plaintiff Potter's views on law enforcement.

17. Evidence, questions, or arguments pertaining to either Plaintiff's legally prescribed medications, or use.

18. Evidence, questions, or arguments pertaining to either Plaintiff's source of income at any time.

19. Evidence, questions, or arguments pertaining to any of the officers' military history or affiliation.

**VII.**   **WITNESSES**

The parties list the following prospective witnesses:

a. Kenneth Potter

b. Jeneane Shellabarger

c. Officer Darren Dicharry

d. Officer Ray Martinez

e. Sgt. Kevin Hale

f. Capt. Kyle Sanders

g. Clint Weston

h. Representative from propertyroom.com

i. Roger Clark

j. Don Cameron

A.      No other witnesses will be permitted to testify unless: (1) the party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the Final Pretrial Conference, or (2) the witness was discovered after the Final Pretrial Conference and the proffering party makes the showing required in section B below.

B.      Upon the post-pretrial discovery of witnesses, the attorney shall promptly inform the Court and opposing parties of the existence of the unlisted witnesses so that the Court may

13

consider at trial whether the witnesses shall be permitted to testify. The evidence will not be permitted unless: (1) the witnesses could not reasonably have been discovered prior to pretrial; (2) the Court and opposing counsel were promptly notified upon discovery of the witnesses; (3) if time permitted, counsel proffered the witnesses for deposition; and (4) if time did not permit, a reasonable summary of the witnesses' testimony was provided by opposing counsel.

## VIII.   EXHIBITS-SCHEDULES AND SUMMARIES

The parties expect numerous exhibits at trial which have been memorialized in the parties' exhibits (ECF Nos. 87-2 & 87-3.) to the Joint Pretrial Conference Statement and are thus incorporated herein.

**Plaintiffs' exhibits shall be listed numerically. Defendants' exhibits shall be listed alphabetically.** The parties shall use the standard exhibit stickers provided by the Court Clerk's Office: pink for Plaintiffs and blue for Defendants. After three letters, note the number of letters in parenthesis (i.e., "AAAA(4)") to reduce confusion during the trial. All multi-page exhibits shall be fastened together and each page within the exhibit shall be numbered. All photographs shall be marked individually. The list of exhibits shall not include excerpts of depositions which may be used to impeach witnesses.

Each party may use an exhibit designated by the other. In the event that Plaintiffs and Defendants offer the same exhibit during trial, that exhibit shall be referred to by the designation the exhibit is first identified. The Court cautions the parties to pay attention to this detail so that all concerned will not be confused by one exhibit being identified with both a number and a letter.

A.      The Court will not permit introduction of other exhibits unless: (1) the party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Scheduling Conference, or (2) the exhibit was discovered after the Pretrial Scheduling Conference and the proffering party makes the showing required in paragraph "B" below.

B.      Upon the post-pretrial discovery of exhibits, the attorneys shall promptly inform the Court and opposing counsel of the existence of such exhibits so that the Court may consider at trial their admissibility. The exhibits will not be received unless the proffering party

14

demonstrates: (1) the exhibits could not reasonably have been discovered prior to pretrial; (2) the Court and counsel were promptly informed of their existence; (3) counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel. If the exhibit(s) may not be copied, the proffering counsel must show that he or she has made the exhibit(s) reasonably available for inspection by opposing counsel.

      C.     As to each exhibit, each party is ordered to exchange a copy identical to the Court's copy, or other reproduction of the exhibit(s) in a three-ring binder(s) **no later than one week before trial.**

      D.     The attorney or representative for each party is directed to present one copy of the exhibit(s) and exhibit list to the Court Clerk's Office, **no later than 3:00 p.m., one week before trial**, or at such earlier time as may be ordered by the Court. The Court shall be presented with a copy of the exhibit(s) in a 3-ring binder(s) with a side tab identifying each exhibit by number or letter. Each binder shall be no larger than three inches in width and have an identification label on the front and side panel.

      E.     It is the duty of counsel to ensure that witnesses have access to a copy of exhibit(s) if needed.

## IX.    DISCOVERY DOCUMENTS

      A.     <u>Lodging Deposition Transcripts and Video Files</u>

It is the duty of counsel to ensure that any deposition transcripts which are to be used at trial have been lodged with the Clerk of the Court **one week prior to trial.** Counsel are cautioned that a failure to discharge this duty may result in the Court precluding use of the deposition or imposition of such other sanctions as the Court deems appropriate.

      B.     <u>Use of Depositions</u>

The parties are ordered to file with the Court and exchange between themselves **no later than one week before trial** a statement designating portions of depositions intended to be offered or read into evidence (except for portions to be used only for impeachment or rebuttal).

      C.     <u>Interrogatories and Admissions</u>

The parties are ordered to file with the Court and exchange between themselves **no later**

15

**than one week before trial** a statement designating portions of Answers to Interrogatories and Admissions which the respective parties intend to offer or read into evidence (except for portions to be used only for impeachment or rebuttal).

## X.     FURTHER DISCOVERY OR MOTIONS

Pursuant to the Court's Pretrial Scheduling Order, all discovery and law and motion was to have been conducted so as to be completed as of the date of the Final Pretrial Conference. That Order is confirmed. The parties are free to engage in informal agreements regarding discovery and law and motion matters. However, any such agreements will not be enforceable in this Court.

## XI.     MOTIONS IN LIMINE

The parties' motions in limine are due no later than 5 p.m. on October 16, 2017. Oppositions are due no later than 5 p.m. on October 23, 2017, and replies, if needed, are due no later than 5 p.m. on October 30, 2017.

## XI.     AGREED STATEMENTS - JOINT STATEMENT OF CASE

The parties did not submit a joint statement of the case as instructed by this Court's Amended Pretrial Scheduling Order. (ECF No. 28 at 7:21–24.) However, the Court will no longer require such a statement as the parties have agreed to a bench trial.

## XII.     AUDIO/VISUAL EQUIPMENT

The parties are required to file electronically a joint request to the Courtroom Deputy Clerk, Michele Krueger, **twenty-one (21) days before trial**, if they wish to reserve and arrange for orientation on the Court's mobile audio/visual equipment for presentation of evidence. There will be one date and time for such orientation.

## XIII.     DATE AND LENGTH OF TRIAL

Trial is scheduled for **Monday, November 13, 2017**. The estimated length of trial is approximately two (2) to three (3) days. Counsel are to email Michele Krueger, Courtroom Deputy Clerk, at mkrueger@caed.uscourts.gov or call 916-930-4163 by **October 30, 2017,** to ascertain the status of the trial date.

///

## XIV. OBJECTIONS TO PRETRIAL ORDER

Each party is granted **fourteen (14) days** from the entry of this Final Pretrial Order to object to any part of the order or to request augmentation to it. A Final Pretrial Order will be modified only upon a showing of manifest injustice. If no objection or modifications are made, this Order will become final without further order of the Court and shall control the subsequent course of the action, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: September 13, 2017

Troy L. Nunley
United States District Judge